## Preferred Acc. Ins. Co. of New York v. Noe.

December 8, 1950.

Rodney G. Bryson, Judge.

Marion W. Moore, Blakely, Moore & Harrison for appellant.

O. M. Rogers and Earl Rodney King for appellee.

JUDGE LATIMER—Affirming.

Appellee, Hattie Noe, was an employee of Elbert Veach, operator of a taxicab business in South Fort Mitchell.

Appellant had issued its policy of insurance to Veach which was accepted by the Division of Motor Transportation and on file there for the purpose of meeting requirements of KRS 281.460.

The facts as to the contractual relationship of the insured, Veach, and appellee were stipulated as follows:

"That Elbert Veach, the insured, employed the plaintiff as a dispatcher the latter part of November, 1946. Her duties were to receive and relay to the insured's taxi drivers calls for taxicab service. Her hours of employment were from 7 A. M., to 7 P. M., twelve hours, for which she was paid a weekly wage of $18.00 for six days. The office where she worked was located in Kentucky Tavern Building, located on the Dixie Highway at the end of the street car line.

"When first employed, she was living on Twelfth

Street, in the City of Covington and used the street cars in going to and returning from her place of employment, paying her own fare; that on or about June 1st, 1947 she moved from Twelfth Street to a place on Madison Pike about a mile south of the city, where she resided when injured. Upon changing her residence, she informed the insured that she would be compelled to quit working for him, as it would take her too long to go to and return from work; thereupon, in addition to her salary the insured agreed to furnish her cab service to and from her residence on Madison Pike to her place of employment on the Dixie Highway and return, and this service was to be furnished without payment of a taxicab fare.

"She accepted the offer and continued in the insured's employment as dispatcher in his office in the Kentucky Tavern Building, with the insured furnishing her taxicab service daily to and from her work, until she was injured on June 21st, 1947.

"On that day and some time after 7 P. M. when her day's work was over, one of the insured's drivers called at her place of employment with the Plymouth car described in the policy of insurance, to take her to her home. She entered the cab and on her way home, the driver operated the same in such a manner as to cause it to collide with a bridge on the highway, wrecking the car and severely injuring her."

Appellee brought suit against Veach, her employer, and obtained judgment in the sum of $2,660.50 for personal injuries.

Appellant, denying liability under the terms of the policy, did not undertake to defend the action on behalf of Veach. The judgment not having been satisfied, appellee brought this action against appellant Insurance Company to recover the amount of the original judgment against Veach.

Appellant, by answer, interposed the defense that the policy of insurance issued to Veach excludes injuries to employees while engaged in their employment; that the State Endorsement excludes employees of the insured who may suffer injuries in the course of their employment; and further that the policy excludes any obli-

gation for which the insured, or any company as his insurer, may be held liable under any workmen's compensation law.

The court below held that appellee, at the time of her injuries, was a passenger and, therefore, within the protection afforded by the policy contract.

The question before us relates to the status of appellee's relationship with appellant's insured at the time of her injury. If appellee was a passenger, she is entitled to the protective benefits of the policy and the judgment should be affirmed. On the other hand, if she was an employee, and injured in the course of her employment, she did not come within the protective limits contemplated by the insurance contract and the judgment should be reversed.

The exclusions relied upon are:

"(d) under coverages A and C, to bodily injury to or death of any employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of the automobile;

"(e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law; * * *."

The portion of the Endorsement relied upon is: "The policy to which this endorsement is attached is written under and pursuant to the provisions of the Motor Regulatory Acts of the General Assembly of the Commonwealth of Kentucky, and is payable to the Commonwealth of Kentucky for the benefit of all persons who may suffer personal injuries or property damage due to any negligence of the assured, his or its agents, servants, or employees in the operation or use of any motor vehicle operating under the assured's certificate, permit or license issued by the Division of Motor Transportation, except employees of the assured who may suffer injuries in the course of their employment."

We have before us the benefit of splendidly prepared briefs. Appellant commences his argument by citing and discussing decisions relative to the legality of exclusion clauses in insurance policies. We have no fault to find

or criticism to offer concerning this approach. However, there is no attack being made here upon the legality of the exclusion clause.

Appellee takes the position that a taxicab is a common carrier; that the liability was imposed by statute and assumed by appellant and that an employee of a common carrier, who is being transported by his employer to and from his place of work, is to be regarded as a passenger.

Appellant undertakes to differentiate between railroads and taxicabs in the matter of furnishing transportation to employees. It is insisted that this record does not disclose the existence of a custom for taxicab operators to give free transportation as an ordinary passenger to employees as a part of the consideration for their services. It is argued that the transportation in the instant case was not gratuitous but an obligation assumed under the contract for the mutual benefit of both employer and employee; that there is a further substantial differentiation in that a pass, as given to an employee to ride upon a train or trolley car, is not limited to the period of time when the employee is going to and from work but may be used at any time; that there is no obligation to give such a free pass on the railroad; that it is merely a gratuity and a courtesy to be extended or revoked at the will of the employer; that the transportation in this case was incidental to, and arose out of, the employment, and that the single purpose in granting the transportation was to enable appellee to continue employment with the insured; and that there is no element of a free pass as given by an employing railroad to its employees.

We agree with appellee that a taxicab engaged in business of transporting passengers for hire is a common carrier. See Shelton Taxi Co. v. Bowling, 244 Ky. 817, 51 S.W.2d 468; and Dix v. Gross, 271 Ky. 231, 111 S.W.2d 673. Therefore, we must consider the question as to when and under what circumstances an employee of a common carrier becomes a passenger of his employer.

The authorities are not in agreement as to the status of one employed by a common carrier and being transported to and from his place of work by that carrier. Appellant cites and quotes from 10 Am. Jur.,

Carriers, Section 973: "An .employee who is carried to and from his place of employment as part of his contract of service, or as a privilege incidental thereto with no deduction from his regular wages for such transportation, is considered by the weight of authority to be a servant, and not a passenger."

It is to be noted, however, that immediately following the above quotation is to be found the contrary view: "Those decisions which express a contrary view hold that an employee while riding in the vehicle, must be deemed to be a passenger while en route to or from his place of work. In a number of instances the relationship between the employee and employer has been viewed as carrier and passenger where it appears that the employee received free transportation as a part of the consideration for the services rendered by him. Accordingly, where a person agrees with a carrier to enter its employ at a certain place, and in consideration of the interests of both a free pass is given to such place, and in traveling on the carrier's road to the place of employment the person is injured by the negligence of the carrier's agents, such person must be regarded as a passenger for hire and not as an employee, and the carrier is liable for damages caused the passenger by its negligence."

In the footnotes to the above quotation numerous decisions are cited, among which is Louisville & N. R. Co. v. Scott's Adm'r, 108 Ky. 392, 56 S.W. 674, 50 L.R.A., 381, a case cited and strongly relied upon by appellee. The cases cited in the footnotes above, and numerous other cases cited by appellee, give as reason for adoption of the rule therein the fact that the employee performed all of his work at a fixed place and his services did not commence until he reached that fixed place and. ended there.

In the case of Klinck v. Chicago City Ry. Co., 262 Ill. 280, 104 N.E. 669, 671, 52 L.R.A., N.S., 70, the court said: "Regarding the status of one in the employ of a common carrier who is being transported upon the cars of his employer to or from his place of work, the authorities are not entirely harmonious. The great weight of authority, however, is to the effect that when the employee, either by virtue of his contract of employ-

ment or under a rule or custom of his employer, is accorded the same means and privileges of transportation over the lines of his employer as an ordinary passenger for hire, then, while riding upon his employer's cars at a time when, under his contract of employment, he is neither under the control of his employer nor obliged to perform any service for him, he is to be regarded as a passenger, and that, under such circumstances, it is immaterial that the employe be either going to or coming from his place of work." Continuing to discuss and approve the opinions, in the cases of Dickinson v. West End Street Ry. Co., 177 Mass. 365, 59 N. E. 60, 52 L.R.A. 326; Doyle v. Fitchburg R. Co., 162 Mass. 66, 37 N.E. 770, 25 L.R.A. 157; McNulty v. Pennsylvania R. Co., 182 Pa. 479, 38 A. 524, 38 L.R.A. 524; Enos v. Rhode Island Suburban Ry. Co., 28 R.I. 291, 67 A. 5, 12 L.R.A., N.S., 244; Indianapolis Traction & Terminal Co. v. Romans, 40 Ind.App. 184, 79 N.E. 1068; and Harris v. City & E. G. Rd. Co., 69 W.Va., 65, 70 S.E. 859, 50 L.R.A., N.S., 706, wherein employees were held to be passengers, the court then said: "In harmony with this line of cases are Louisville & N. R. Co. v. Scott's Adm'r, 108 Ky. 392, 56 S.W. 674, 50 L.R.A. 381; Whitney v. New York, New Haven, & Hartford Rd. Co., 1 Cir., 102 F. 850, 50 L.R.A. 615; and Chattanooga Rapid Transit Co. v. Venable, 105 Tenn. 460, 58 S.W. 861, 51 L.R.A. 886."

In the Venable case, supra, the Court said: "The weight of authority and of sound policy, we think, is that where a servant performs all his work at a fixed place, and the master, either by custom or as a gratuity, carries him to and from his work, the servant doing no service for the master on the train, he is to be treated as a passenger." [105 Tenn. 460, 58 S.W. 863.]

In the case at bar, no service was to be performed by appellee upon the line of travel while in the taxicab between the residence and the place of work. There was no performance of duties for the taxicab company while riding in the taxicab. While going to and from her work she was merely on her way to and from the place where she took up and left her position as servant. Her services were entirely distinct from that of the operation of the taxicab. Her time was her own and she owed her employer no duties until she arrived

at her place of work. She was by no means under the control of her employer while thus traveling to and fro. She could go where she pleased and when she pleased during the time before and after her work commenced and ended. Under the contractual relation, she was under no obligation to use the taxi, although there was an obligation on the part of the employer to afford the opportunity of doing so. Having availed herself of the opportunity to use the taxi, and exercised the right to which she was entitled, she obviously became a passenger.

The judgment is affirmed.